# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| AMY HUDSON<br>3881 Old Savannah Dr., Apt. 6,<br>Cincinnati, OH 45245 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| MARATHON PETROLEUM CORP. d/b/a<br>SPEEDWAY<br>8352 Beechmont Avenue,<br>Cincinnati, OH 45255 | ) ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>MARATHON PETROLEUM CORP.<br>d/b/a SPEEDWAY<br>c/o CT Corporation Systems<br>Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219 | ) ) ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| MARATHON PETROLEUM CORP.<br>D/B/A SPEEDWAY<br>ATTN: HR and/or Legal<br>P.O. Box 1500<br>Springfield, OH 45501 | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, Amy Hudson, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Hudson is a resident of the city of Cincinnati, Clermont County, Ohio.

1

2. Defendant Marathon Petroleum Corp. ("Speedway") is a foreign for-profit corporation that conducts business within the state of Ohio.

3. The relevant location of the events and omissions of this Complaint took place was 8352 Beechmont Avenue, Cincinnati, OH 45255.

4. Speedway is, and was at all times hereinafter mentioned, Hudson's employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. §12101 and R.C. § 4112.01 et seq.

5. Within 300 days of the adverse employment actions described herein, Hudson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-01216 ("EEOC Charge").

6. On or around March 15, 2022, the EEOC issues and mailed a Notice of Right to Sue letter to Hudson regarding the EEOC Charge.

7. Hudson received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Hudson had filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Hudson had properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Butler County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the ADA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper pursuant to 28 U.S.C. §1391.

## FACTS

15. Hudson is a former employee of Speedway.

16. Hudson was qualified for her position(s) with Speedway.

17. As a result of suffering from anxiety, depression, PTSD, bipolar disorder, and IBS, Hudson is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

18. As a result of suffering from anxiety, depression, PTSD, bipolar disorder, and IBS, Hudson is and was considered disabled within the meaning of the ADA.

19. Despite this actual or perceived disabling condition, Hudson was still able to perform the essential functions of her job.

20. Hudson began her time at Speedway working at the New Richmond location, training under general manager Tammy LNU.

21. After a brief amount of time, in or around mid-November 2020, Hudson was transferred to the Beechmont location, training under Nikki Dixon.

22. Dixon did not give Hudson the training she needed.

23. Hudson requested completion of her training and gave Dixon notice of her disabilities.

24. Hudson had issues with memory due to her disabilities, which is why she requested the training. This was a request for a reasonable accommodation, or at least to engage in the interactive process.

25. Hudson was not given this training.

26. Speedway failed to accommodate Hudson's disabilities by not giving her proper training or engaging in the interactive process.

27. In or around late December 2020, Dixon asked Hudson to start asking for Speedy Rewards cards from customers.

28. Upon Dixon's instruction, Hudson used a generic Speedy Rewards card number for customers who didn't have Speed Rewards cards.

29. This led to a customer getting a free drink from the generic card's usage.

30. Hudson reported the free drink to Dixon, who found no issues and had her provide the customer with the free drink.

31. In or around January 2021, Hudson bought a drink with the free rewards number intending to pay for it the next day after she received her paycheck.

32. This was a common practice among Speedway workers, as confirmed by Dixon.

33. Hudson reported she was buying the drink to Dixon and district manager Sam LNU.

34. At the time, Dixon and Sam LNU did not have any issues with Hudson delaying payment on the drink.

35. On or about January 7, 2021, Dixon and Sam LNU met with Hudson.

36. At the meeting, Hudson was given termination papers and informed the reason for her termination was "Speedy Rewards fraud" for buying the drink but waiting to pay the next day.

37. Hudson informed Dixon and Sam LNU that she paid for the drink the next day and had asked for permission ahead of time.

38. Hudson also reminded Dixon and Sam LNU that she had memory trouble due to her disabilities and a lack of training, meaning she didn't know it was a company policy that employees couldn't wait to pay for purchases.

39. Hudson previously observed other employees doing the same thing, and believed it was an accepted practice at Speedway.

40. Sam LNU told Hudson the termination would still stand because "some people get caught and some don't."

41. Upon information and belief, Speedway has a progressive disciplinary policy,

42. Upon information and belief, Speedway's disciplinary policy calls for escalating levels of discipline for policy infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

43. Hudson did not receive a verbal warning.

44. Hudson did not receive a written warning.

45. Hudson did not receive a second written warning.

46. By terminating Hudson, Speedway violated its own progressive discipline policy.

47. Speedway's purported reason for Hudson's termination is pretext for disability discrimination.

48. Upon information and belief, Speedway permitted similarly-situated employees to retain their employment despite following the same practice of delaying payment Hudson did.

49. Defendants did not proffer a legitimate non-discriminatory reason for terminating Hudson.

50. As a result of being constantly harassed and insulted on the basis disability during her employment at Speedway, and being wrongfully terminated from Speedway, Hudson has suffered severe emotional distress, anxiety, and depression.

51. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

52. There was a causal connection between Hudson's disability and Defendants' termination of Hudson.

### COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

53. Hudson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

54. Hudson suffers from anxiety, depression, PTSD, bipolar disorder, and IBS.

55. Hudson is disabled.

56. In the alternative, Speedway perceived Hudson as being disabled.

57. Hudson's conditions substantially impaired one or more of her major life activities including working.

58. Speedway perceived Hudson's condition to substantially impair one or more of her major life activities including working.

59. Speedway treated Hudson differently than other similarly-situated employees based on her disabling condition.

60. Speedway treated Hudson differently than other similarly-situated employees based on her perceived disabling condition.

61. On or about January 7, 2021, Defendant terminated Hudson's employment without just cause.

62. Alternatively, Defendant's purported reason for Hudson's termination was pretext.

63. Defendant actually terminated Hudson's employment based her disability.

64. Defendant violated the ADA when it discharged Hudson based on her disability.

65. Speedway violated the ADA by discriminating against Hudson based on her disabling condition.

66. Hudson suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to the ADA.

67. As a direct and proximate result of Defendant's conduct, Hudson suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION UNDER R.C. §4112.02

68. Hudson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

69. Hudson suffers from anxiety, depression, PTSD, bipolar disorder, and IBS.

70. Hudson is disabled.

71. In the alternative, Speedway perceived Hudson as being disabled.

72. Hudson's conditions substantially impaired one or more of her major life activities including working.

73. Speedway perceived Hudson's condition to substantially impair one or more of her major life activities including working.

74. Speedway treated Hudson differently than other similarly-situated employees based on her disabling condition.

75. Speedway treated Hudson differently than other similarly-situated employees based on her perceived disabling condition.

76. On or about January 7, 2021, Defendant terminated Hudson's employment without just cause.

77. Alternatively, Defendant's purported reason for Hudson's termination was pretext.

78. Defendant actually terminated Hudson's employment based her disability.

79. Defendant violated R.C. § 4112.02 when it discharged Hudson based on her disability.

80. Speedway violated R.C. § 4112.02 by discriminating against Hudson based on her disabling condition.

81. Hudson suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

82. As a direct and proximate result of Defendant's conduct, Hudson suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

132. Hudson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Hudson informed Speedway of her disabling condition.

134. Hudson requested accommodations from Speedway in the form of completion of her training to assist with her disabilities.

135. Hudson's requested accommodations were reasonable.

136. This was an accommodation available that would have been effective and would have not posed an undue hardship to Speedway.

137. Speedway failed to engage in the interactive process of determining whether Hudson needed an accommodation.

138. Hudson failed to provide an accommodation.

139. Speedway violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

140. As a direct and proximate result of Speedway's conduct, Hudson suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: FAILURE TO ACCOMMODATE UNDER O.R.C. 4112.01 et. seq.

141. Hudson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Hudson informed Defendant of her disabling condition.

143. Hudson requested accommodations from Defendant to assist with her disabilities including completion of her training.

144. Hudson's requested accommodations were reasonable.

145. There was an accommodation available that would have been effective and would have not posed an undue hardship to Speedway.

146. Defendant failed to engage in the interactive process of determining whether Hudson needed an accommodation.

147. Defendant failed to provide an accommodation.

148. Defendant violated R.C. § 4112.02 by failing to provide Hudson a reasonable accommodation.

149. Hudson suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendant's conduct, Hudson suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Hudson demands from Defendant the following:

   a) Issue a permanent injunction:

      i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

      ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

      iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

      iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Hudson's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Hudson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Hudson's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

　/s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
　　　Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:　 (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Amy Hudson*

## JURY DEMAND

Plaintiff Amy Hudson demands a trial by jury by the maximum number of jurors permitted.

                                                                /s/ Evan R. McFarland

Evan R. McFarland (0096953)